**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CRIMINAL NO. 4:25-cr-40040- MRG |
| ADAM GENTILE, Defendant | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

This Court is burdened to measure the life and actions of Adam Gentile ("Adam") for the crimes of Wire Fraud, for which he accepts full responsibility, in fashioning a sentence that is 'sufficient but not greater than necessary.'

Adam begs the Court to set him on a path of redemption rather than waste and impose a sentence that punishes him for his crimes and allows him to begin making amends for his crimes.

Adam respectfully submits this sentencing memorandum in support of a sentence of One-Year (12 Months) of Home Confinement, followed by 3 years of supervised release, no fine based on $7.1 million in restitution, forfeiture as set out in ¶ 6 of the plea agreement, and a mandatory special assessment of $300. This sentence is 'sufficient but not greater than necessary' to accomplish the goals of sentencing.

### Procedural History

On March 31, 2026, Adam made his initial appearance on docket 4:25-cr-40040 in the Worcester Federal Court. On the same date, Adam waived indictment [dkt. 15]

and promptly pled guilty to the Information charging him with three (3) counts of wire fraud in violation of 18 U.S.C. § 1343. Adam was released on personal recognizance and conditions of release. Sentencing was scheduled for July 16, 2026. Undersigned counsel was appointed to represent Adam and the sentencing date was continued until August 27, 2026.

Since the date of the plea, Adam has complied with all conditions of release. **PSR, ¶ 4**.

**Defendant's Sentencing Argument**

"District Courts must determine in each case what constitutes a sentence that is 'sufficient, but not greater than necessary, to achieve the overarching sentencing purposes of 'retribution, deterrence, incapacitation and rehabilitation."' *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018), citing *Tapia v. United States*, 131 S. Ct. 2382 (2011). "…[a] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id*. After both parties are given an opportunity to argue for a sentence the party deems appropriate, the Court should then consider all factors set out in 18 U.S.C. § 3553 (a). *Id*. at 596. The court may not presume the Guidelines range is reasonable. The court "must make an individualized assessment based on the facts presented." *Id*. at 597.

**<u>Adam Gentile's Background</u>**

Adam is a 40-year-old man who was born in Methuen, MA. Adam has an older brother, William, and a half-sister Misty. Adam and his brother were raised in New Hampshire by their mother and father. Most importantly, Adam is the proud father of four (4) children.

Adam's father was a loving and nurturing family man. **PSR, ¶ 53**. Adam's father was stricken with liver cancer in 2006 at the age of 50. **PSR, ¶ 56**. Though his prognosis was initially good, his condition declined rapidly and he died while valiantly fighting the cancer. Adam was a freshman in college at the time of his father's death.

Adam's shares a close relationship with his mother, Debra. Adam describes his mother as 'more business-like and less maternal as he was growing up. **PSR, ¶ 53**. Adam's relationship with his mother was more complex given Adam's homosexuality. Their relationship has evolved and she has deep and overwhelming respect for Adam's relationship with his children. **Exhibit Eight**. Debra likens Adam's relationship with his children to the relationship her late husband shared with Adam. "As I have watched Adam raise his own children, I have often seen so much of his father in him." **Exhibit Eight, ¶ 5**. "My husband, William, loved his family unconditionally and would have gone to the ends of the earth for his children. Adam is exactly the same." *Id*. at ¶ 6.

Adam did not share a very close relationship with his older brother while growing up. Adam reports he and his brother Bill have always been very different from one another. **PSR, ¶ 58**. Despite their differences, Bill recognizes the love and dedication Adam has for his children. "His children are his world." **Exhibit Nine, ¶ 4**. "…Adam has always shown patience, love and commitment to them." *Id*. at ¶ 2.

A few years ago, Adam learned he had a half-sister, Misty. Though they grew up about 10 minutes from each other, neither knew the other existed. They learned of each other's existence when Misty decided to take a DNA test to learn more about her family history. **Exhibit Three**. As a result of the DNA test, Misty learned Adam was her brother. This spawned a loving relationship between Adam and his sister. Misty was touched as she reports "Adam never focused on everything they missed. He focused on everything we still had the opportunity to share." **Exhibit Three, ¶ 5**.

*Adam's Own Family*

Adam is the father of four (4) children that include a set of triplets who are eight (8) years old and his older son, age nine (9). Adam divorced from his husband in 2023. His ex-husband has not been an active participant in raising the children. His ex-husband is allotted 10 ½ hours per week and every other weekend with the children, though often cancels his time with the children. **PSR, 61**. Adam is the primary caretaker for the children and willingly accepts all the responsibility associated with being their father. Adam's ex-mother-in-law, Lisa Flemming, supports the fact that "Adam is their main caregiver." **Exhibit Five**. Lisa indicates the "children have a very deep and loving bond with Adam. They look to him for guidance, consistency and emotional support." *Id*. at ¶ 3. His close friend Tracy notes "one of the greatest joys of our friendship has been watching Adam become a father." **Exhibit One, ¶ 4**. Adam excels at parental duties being present, comforting his children when they are upset, celebrating their successes, helping with their homework and always putting their needs first. "That is exactly the kind of father I have watched Adam become over the years." *Id*. at ¶ 6. These parental duties extend outside the home. Adam welcomes making

sure he is up to date of his children's school performance. The principal at the kids' school notes that Adam is the "primary parental point of contact for the children, his correspondence is reliable and completed in a timely manner and attends the parent-teacher conferences for his children. **Exhibit Two**. Adam's cousin Michelle describes their relationship as being closer to brother and sister than cousin's. Michelle has grown up with Adam and had the opportunity to watch Adam raise his children. Michelle observes, "Watching him raise his four children has reminded me so much of the love, generosity, thoughtfulness and devotion that my Uncle Bill showed all of us growing up. I have no doubt those same values will continue to shape the lives of Adam's children for years to come." **Exhibit Four, P. 2, ¶ 6**.

Jessica Lescarbeau and her husband are long-time friends with Adam. In fact, they share a special bond. Jessica was the surrogate for his children. While sharing her disappointment when learning of Adam's criminal conduct, she is unwavering on Adam's support as a father. Jessica notes, "I am very selective about the people I trust around my children. Adam has always been one of those people. I have trusted him completely for many years because of the kindness, patience, compassion and genuine care he consistently shows to children and the people he loves." **Exhibit Seven, P. 2, ¶ 3**.

Adam has unequivocally accepted responsibility for his crimes. He recognizes the harm caused to the victims in this case. He is filled with remorse and shame about his conduct. The case has caused Adam to reflect on his life and the choices he has made. It has forced him to recognize the harm he caused to the victims in the case.

Along with the substantial harm to the victims, it has also caused him to understand the harm to his friends, family and most importantly, his innocent children.

Over the years, Adam fell into the trappings that are often associated with success. Convinced the next promotion, next job accomplishment, next home or next financial milestone we the most important things, **Exhibit Eleven, P. 2, ¶ 13**, he lost his way and abandon his fundamental values.

Adam recognizes his core values as a person are the most important guardrails in his life. His core values will allow him to focus on the things he cares most about in his life, loving his children and providing them with the paternal support and love he received while growing up. Adam's friend Jerilyn notes he has recently converted to Christianity. Jerilyn notes, "he has evolved from a lost, deeply unhappy individual, riddled with anxiety and fear, and into a man full of hope, enduring faith, a profound sense of peace." **Exhibit Six, ¶ 4**.

It is with the deepest remorse, and profound shame that Adam asks the court to accept his sentencing recommendation.

## Applicable Sentencing Guidelines

In this case, Adam has pled Guilty to three (3) counts of Wire Fraud in violation of 18 U.S.C. § 1343. This charge has a base level offense of 7. U.S.S.G. §2B1.1(a). The loss incurred was between $3,500,000 and $9,500,000, thereby adding 18 levels. U.S.S.G. § 2B1.1(b)(1)(J). The offense involved abuse of a position of trust as it occurred in Adam's position as office manager where he had access to payroll systems. This increases the level of offense by 2 levels. U.S.S.G. § 3B1.3.

Adam has clearly accepted responsibility for his offense, thereby decreasing his base level offense by 2. U.S.S.G. §3E1.1(a)

Adam timely notified the Government of his intention to enter a Guilty plea on the above referenced charges thereby allowing the Government to avoid preparing for trial resulting in a 1-level decrease in his base level. U.S.S.G. § 3E1.1(b).

This results in a **total offense level of 24**.

<u>Criminal History</u>

Adam's criminal history score is three (3). A score of three (3) criminal history points places Adam in a criminal history category of II. U.S.S.G. chapter 5, Part A.

<u>Guideline Range</u>

Based on a base level offense of 24 and a criminal history category II, Adam's Guideline range is 57-71 months.

<u>Variance from U.S.S.G</u>

Adam asks the court to impose a variance from the U.S.S.G. "Variances do differ from departures. There may well be cases that would not justify a departure under the Guidelines, but which are appropriate for a variance. Factors ordinarily considered irrelevant in calculating the advisory guideline range, or in determining whether a guideline departure is warranted, can be relevant in deciding whether to grant a variance." *United States v. Chase*, 560 F. 3d 828, 830 (1st Cir., 2009). "… a variance diverges from the guidelines based on the exercise of the Court's discretion under § 3553(a). *United States v Fumo*, 655 F. 3d 288, 317 (3d Cir. 2011). "In fashioning a 'sentence sufficient, but not greater than necessary' {citation omitted}, district courts are not only permitted, but required to, consider the history and characteristics of the

defendant." *Id*. "…factors such as a defendant's age, medical condition, prior military service, *family obligations*, entrepreneurial spirit etc. can be the basis for a variance." *Id*. {emphasis added}. "In addition, factors that have already been taken into account in calculating the advisory guideline range, such as a defendant's lack of criminal history, can nevertheless form the basis of a variance." *Id*. Permissible downward departures generally involve situations where the defendant is an *irreplaceable* caretaker of children, elderly, and/or seriously ill family members, and to the extent of the departure appropriately serves to protect those family members from the impacts of the defendant's prolonged incarceration." *United States v. Leon*, 341 F. 3d 928, 931 (9th Cir. 2002).[1]

The circumstances surrounding this case are appropriate for the variance requested by Adam.

The parental obligations to care for his four (4) children make this a case where a variance from the sentencing guidelines is warranted. Here, Adam is undoubtedly the primary caretaker for his children. They live with him. He provides for them. He schedules and transports them to and from school along with any medical appointments that are required. The level of care Adam provides is corroborated by all of the exhibits provided with the sentencing memorandum. As for alternative care for the children, his ex-husband is not a reliable substitute.[2] **Exhibit Thirteen**. As referenced in the PSR,

---

[1] Adam recognizes the difference between a departure and a variance and asks the court to exercise its' discretion under § 3553(a) to vary to his proposed sentence.

[2] Pursuant to a parenting agreement entered into on July 9, 2026, Adam's ex-husband has visitation with the children on Tuesday, Wednesday and Thursday from 3:00-7:00. Since the agreement entered, Adam's ex-husband has cancelled visits several times.

his ex-husband frequently cancels the limited parenting time he is allotted with the children.[3],[4] **PSR, ¶ 61**. Adams' parental responsibility make him the irreplaceable caretaker as contemplated in *Leon*.

Adam's family are not reasonably able to care for the children. First, Adam's brother lives in Georgia. Setting aside the fact that Adam and his brother do not share a close relationship, his brother has three children of his own. Adding four children or more than doubling his brothers' childcare responsibilities is not practical. Second, Adam's mother is also not in a position to care for the children. At the age of 68, she lives in a one-bedroom in-law suite located in her other son's basement. His mother is afflicted with multiple chronic health conditions that make full time care for four young children not practical. **Exhibit Twelve**.

It is clear, there is no good alternative to caring for the children if Adam is incarcerated. It is also possible any care arrangements would require the children to be separated from each other. For example, each child could be sent to be raised in a different place. Potentially, two could be sent to one location and the other two to a different location. Not only will their bond with Adam suffer harm, their bond with each other will also be damaged. A 2025 article titled "Siblings within Separation: The Impact of Family Breakdowns on Brother and Sister Bonds" written on May 2, 2025 and published at www.childresourcegroup/news/siblings-within-seperation.com discusses the impact of sibling separation not only from the parent from each other. The article

[3] Adam has filed a Motion for further custody modifications.

[4] Adam also reports that his ex-husband struggles with mental health and substance use issues. This has an effect on parenting the kids.

notes that children separated from their siblings can lead to experiencing grief, sadness and anxiety, similar to separation from a parent. The article also notes the separation can also lead to behavioral issues such as withdrawl, aggression, or difficulties forming new relationships.

The circumstances strongly suggest Adam is an irreplaceable caregiver for his four (4) children. Adam begs the Court to recognize his role as an irreplaceable caregiver and impose his requested sentence.

Sentencing Factors under 18 U.S.C. § 3553(a)

The Court, in determining the particular sentence to be imposed, shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). "The commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics, matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable or public service are generally not considered under the Guidelines. See U.S.S.G. Manual, §§ 5111.1-6, 11 and 12 (November 2006). These are however, matters that § 3553(a) authorizes the sentencing judge to consider." *Rita v. United States*, 127 S. Ct. 2456, 2473 (2007) (Stevens J. and Ginsburg J., concurring).

Nature and Circumstances of Crime

The facts giving rise to these indictments involve three (3) counts of wire fraud where $7,100,000 was stolen from two separate employers.

<u>Personal History and Characteristics of Defendant</u>

As referenced in Adam's background above, he has significant support from his friends and family. In addition, Adam is deeply remorseful of his conduct and the harm it has caused the victims in the case as well as his friends and family.

Each of the exhibits provides anecdotal evidence of Adam as a person. It is apparent the consistent theme that all of his friends and family share is the love, devotion and care for his children. In his 30's, Adam has made a series of bad decisions. It is also apparent, at the age of 40 he is 100% committed to his role as a father. Equally apparent, the well-being of his children is at the forefront of his purpose in his life, not only before this crime, but moving forward with his life.

<u>The Need for the Sentence Imposed</u>

Under 18 U.S.C. § 3553(a)(2), the Court must consider the following factors when imposing sentence:

> The sentence must reflect the seriousness of the offense, and should promote respect for the law, and to provide a just punishment for the offense. The sentence must also afford adequate deterrence to criminal conduct, and should protect the public from further crimes of the defendant, and must also consider whether the sentence will address any needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

<u>Seriousness of Offense, Respect for Law, Just Punishment</u>

After pleading Guilty, Adam is a convicted felon. A sentence of home confinement for 12 months, followed by a 3-year period of supervised release is 'sufficient, but not greater than necessary.' Allowing Adam's request for a variance from

the Guidelines and imposing a sentence of home confinement for 12 months, followed by a 3-year period of supervised release promotes respect for the law and is a just punishment for the crimes committed in this case.

Deterrence

*Specific Deterrence*

A sentence of Home Confinement serves as a specific deterrent for Adam to avoid any future criminal activity. Home Confinement will be a restraint on his liberty and serve as a constant reminder that should he violate his terms of supervised release; he could be sent to prison. Having never spent any time in custody, this restraint on liberty and modification of coming and going as he pleases are a substantial deterrent as to what he might face should he reoffend.

*General Deterrence*

The sentence also serves the purpose of being a general deterrent for those who consider engaging in like/or similar conduct. While some might consider the requested sentence to be the proverbial ‘slap on the wrist,’ it is not lost on Adam that he will bear the cross of being a convicted felon for the remainder of his life. All of the problems that come with the conviction are substantial. Additionally, Adam will not be able to do all of the things and activities one would ordinarily do while their children are growing up. This sentence serves the purpose of acting as a general deterrent.

Protection of the Public

The proposed sentence will protect the public. There is no allegation of violence as a result of this crime. The period of home confinement and being under the

supervision of the court for a 3-year period of supervised release will protect the public and is ‘sufficient, but not greater than necessary’ to accomplish protecting the public.

Correctional Treatment

Adam does not suffer from substance use issues. By all accounts of those who know him best, he is an excellent, devoted father focused on the well-being and happiness of his children. A sentence of incarceration is not necessary to receive Correctional Treatment.

The Need to Avoid Unwarranted Sentence Disparities

The proposed sentence does not create an “unwarranted” sentence disparity. Adam’s request for a variance is based on the sentencing factors outlined in 18 U.S.C. § 3553(a)(1). When considering the background information provided relating to the facts and circumstances of the case Adam requests this Honorable Court apply a variance and adopt his sentencing recommendation of one year home confinement followed by 3 years of supervised release, restitution as referenced in the PSR and a mandatory special assessment of $300. This sentence is ‘sufficient but not greater than necessary.’

## **Conclusion**

In the unique circumstances of this case, a variance to Adam’s requested sentence is appropriate and warranted. The sentence is just and does not offend justice. The sentence requested is ‘sufficient, but not greater than necessary.’

DATE: August 20, 2026

Respectfully Submitted
Adam Gentile
By his attorney,

/s/ Jeffrey Miller
Jeffrey Miller, Esq.
529 Main St., Ste. 200
Boston, MA 02129
BBO # 670561
(857) 919-3647
jmiller@millercriminaldefense.com

**CERTIFICATE OF SERVICE**

I, Jeffrey Miller, hereby certify that this document, filed through the ECF System on August 20, 2026, will be electronically sent to the registered participants as identified on the Notice of Electronic Filing (NEF), and that papers will be sent to all non-registered participants who have appeared in this case.

/s/ Jeffrey Miller
Jeffrey Miller